UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

JERMAINE STEVENSON,

                      Plaintiff,                          Case No. 1:07-cv-213

v.                                             Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                      Defendants.

_____/

## REPORT AND RECOMMENDATION
### Part I

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Plaintiff filed the instant action in the Eastern District of Michigan on January 24, 2006, and the case was transferred to the Western District of Michigan on February 28, 2007. Plaintiff is currently incarcerated at the Southern Michigan Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Muskegon Correctional Facility (MCF) and Earnest C. Brooks Correctional Facility (LRF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC),[1] Correctional Medical Services, Inc. (CMS), Dr. (Unknown) LaVine, Dr. (Unknown) Shneiberger, Ashley (Unknown),[2] LRF Nurse (Unknown) Burdette, LRF Nurse (Unknown)

_____

[1]On February 10, 2006, the Eastern District of Michigan dismissed Plaintiff's action against Defendants MDOC and Berghuis for failure to state a claim and ordered service of Plaintiff's Eighth Amendment claim against the remaining Defendants (docket #4).

[2]Defendants Ashley (Unknown), LRF Nurse (Unknown) Burdette, and LRF Nurse (Unknown) Overture are dealt with in Part II of this Report and Recommendation.

Wilkerson, LRF Dr. (Unknown) Royster, LRF Nurse (Unknown) Overture, and LRF Warden Mary Berghuis.

On May 25, 2007, Defendants Royster and CMS filed a "Motion for Summary Judgment/Motion to Dismiss"[3] and supporting brief (docket #86) because Plaintiff allegedly failed to exhaust his available administrative remedies.  On May 25, 2007, Defendants Schneeberger and Levin[4] also filed a motion and brief for summary judgment (dockets #87, 88) because Plaintiff allegedly failed to exhaust his available administrative remedies.

Plaintiff filed a response and affidavit in opposition to Defendants Schneeberger and Levin's Motion for Summary Judgment and Defendants Royster and CMS' Motion for Summary Judgment (dockets #91, 92) on July 2, 2007.  On July 19, 2007, Defendants Royster and CMS filed a reply (docket #95) to Plaintiff's response.  On August 13, 2007, Plaintiff filed a response to Defendants Royster and CMS' reply (docket #96).

On November 7, 2007, this Court ordered (docket #98) Defendants to file a legible copy of Plaintiff's Grievance No. LRF-04-09-901-539-12D1.  Defendants complied with the Court's order on November 16, 2007.  (*See* Ex. A to Defs.' Notice, docket #99.)

Upon review, I recommend that Defendants Royster and CMS' Motion for Summary Judgment (docket #86) and Defendants Schneeberger and Levin's Motion for Summary Judgment (docket #87) be denied.

---

[3]Defendants Royster and CMS filed a hybrid Motion to Dismiss and Motion for Summary Judgment.  Since the Court ordered Defendants to file a motion for summary judgment (docket #76) on April 27, 2007 and Plaintiff relied upon that order, Defendants Royster and CMS' motion will be treated as a Motion for Summary Judgment.

[4]Defendants' Motion for Summary Judgment refers to Drs. LaVine and Shneiberger as Drs. Levin and Schneeberger.  Plaintiff's response in opposition to Defendants' Motion for Summary Judgment also refers to the doctors as Drs. Levin and Schneeberger.  (Pl.'s Resp. at 2, docket #91.) Therefore, the Court shall refer to those Defendants as Drs. Levin and Schneeberger throughout this report and recommendation.

## Applicable Standard for Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative

defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### Facts

In his *pro se* complaint, Plaintiff asserts an Eighth Amendment claim against Defendants Royster, CMS, Schneeberger and Levin for failing to provide adequate medical care for his broken arm.  On April 15, 2004, Plaintiff claims that he fell off his top bunk and severely broke his left arm.  The MDOC subsequently transported Plaintiff to Hackley Hospital.  Defendant Levin treated Plaintiff, allegedly noting that the fracture would require surgery to heal correctly.  However, Defendant Levin failed to schedule any surgical procedure for Plaintiff's fracture.  (Compl. at 8, docket #1.)[5]

---

[5]Since Plaintiff did not number the pages of his pleadings, the Court used the page numbers assigned by CM/ECF for clarity.

On May 3, 2004, Defendant Schneeberger also treated Plaintiff.  Although he supposedly found that Plaintiff's arm was not healing correctly, Defendant Schneeberger also failed to schedule Plaintiff for surgery.  (*Id.*)

The MDOC transferred Plaintiff to LRF on May 17, 2004.  On May 26, 2004, Defendant Royster examined Plaintiff but did not order surgery for Plaintiff's fracture despite the enormous pain in Plaintiff's left arm.  Rather, she gave Plaintiff Motrin for his pain.  (Attach. A to Pl.'s Resp. at 3, docket #91.)

Plaintiff sent numerous kites to LRF health care staff, including Defendants Burdette, Wilkerson and Royster; however, his complaints were largely left unanswered.  If Plaintiff was provided with pain medication, then it was allegedly inadequate to treat his pain.  (Compl. at 9, docket #1.)

On June 2, 2004, Defendant Schneeberger examined Plaintiff and ordered a bone stimulator and brace for Plaintiff.  The MDOC transported Plaintiff to Duane L. Waters Hospital on July 7, 2004 to fit him for the bone stimulator and custom brace.  At the hospital, Defendant Ashley attempted to fit Plaintiff's arm with the bone stimulator and brace but she did not have the appropriate equipment to remove Plaintiff's cast.  Defendant Ashley contacted Defendant Burdette at LRF regarding the situation but Defendant Burdette allegedly instructed Defendant Ashley to remove Plaintiff's cast anyway.  Plaintiff asserts that Defendant Ashley removed his cast, and then reattached the original cast with ace bandages, causing him tremendous pain.  (Attach. A to Pl.'s Resp. at 3-4; Compl. at 10-11.)

Plaintiff sent numerous kites to LRF's medical staff in July, August and September 2004, including Defendants Overture, Burdette and Wilkerson, for adequate pain medication to no avail.  (Attach. A to Pl.'s Resp. at 4-5.)

Finally, six months after his injury, Defendant Burdette authorized a second medical opinion for Plaintiff's injury.  On October 14, 2004, an orthopedic specialist examined Plaintiff.  (Attach. A to Pl.'s Resp. at 5.)  The specialist noted that Plaintiff should have undergone surgery immediately after his injury.  (*Id.*)  Since Plaintiff did not receive immediate surgery, he suggested that Plaintiff may undergo several future operations and may never regain his normal range of motion in his left arm.  (Compl. at 12.)  On October 28, 2004, the MDOC transferred Plaintiff to the Southern Michigan Correctional Facility.  (Attach. A to Pl.'s Resp. at 5-6.)  On October 29, 2004, Plaintiff underwent surgery to correct the fracture in his left arm.  (*Id.* at 6.)

On September 29, 2004, Plaintiff filed Grievance No. LRF-04-09-01-539-12D1 against "health services", Defendant Ashley and "Tri-County Orthopedic" for lack of medical care.  (Ex. A to Defs.' Notice, docket #99.)  He appealed Grievance No. LRF-04-09-01-539-12D1 through the three-step grievance process.

Plaintiff requests declaratory relief and compensatory and punitive damages.  (Compl. at 14-15.)

## Discussion

I.      **Applicable Law**

Defendants assert that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his

available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with state-created deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

In *Woodford*, 126 S. Ct. at 2387, the Supreme Court described the doctrine of "proper exhaustion" in administrative law.  "Proper exhaustion" occurs when a plaintiff complies with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances.  *Id.* at 2386-388.  It is a precondition to any suit challenging prison conditions.  *Id.*  As "a general rule . . . [,] courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*."  *Id.* at 2385 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis in original)).  The Supreme Court has emphasized that the exhaustion doctrine affords the administrative agency an opportunity to correct the problem before the issue is reviewed by a court.  *L.A. Tucker Truck Lines, Inc.,* 344 U.S. at 37; *see also Sims v. Apfel,* 530 U.S. 103, 108-09 (2000) (finding that where an agency's regulations require issue exhaustion, an objection not raised will not be considered by a court); *Unemployment Compensation Comm'n of*

*Alaska v. Aragon,* 329 U.S. 143, 155 (1946) ("[t]he responsibility of applying the statutory provisions to the facts of the particular case was given in the first instance to the Commission. A reviewing court usurps the agency's function when it sets aside an administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."); *Hormel v. Helvering,* 312 U.S. 552, 556-57 (1941).

The *Woodford* Court examined the text of the Prison Litigation Reform Act of 1995 (PLRA), finding that it required administrative exhaustion. *Woodford,* 126 S. Ct. at 2387. Proper exhaustion serves the PLRA goals of (1) limiting federal court interference with the administration of prisons, (2) affording officials time and opportunity to address complaints internally before the initiation of a federal lawsuit, and (3) reducing the quantity and improving the quality of prisoner suits. *Id.*

The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify *Woodford's* holding regarding "proper exhaustion," but made it clear that courts were not free to embellish the statutory elements of exhaustion with requirements of their own. *Id.* The *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.* In rejecting the requirement that a prisoner had to identify any party he or she sought to sue in an initial grievance, the *Jones* Court concluded the Sixth Circuit's policy lacked a textual basis in the PLRA:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance

> with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[6] The *Jones* Court also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26.

### II.    **Applicable Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[7] was the version in effect at all times applicable to this lawsuit. Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the

---

[6]Because "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones,* 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

[7]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the December 19, 2003 version of the Policy Directive was in effect at all times applicable to the instant action.

issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Once a grievance is filed, the grievance coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected." *Id.* at ¶ Y. The paragraph continues:

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due . . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or reject[] for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

*Id.* At the interview, a grievant has an opportunity to explain the grievance more completely so that the respondent can gather any additional information necessary to respond to the grievance. *Id.* at ¶ AA.

The Policy Directive provides a number of reasons for which a grievance *must* be rejected and other reasons for which a grievance *may* be rejected.[8] A grievance coordinator must reject grievances (1) jointly filed by two or more prisoners or filed by multiple prisoners as an organized protest, (2) raising certain non-grievable issues, or (3) using profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. *Id.* at ¶¶ F, G. In contrast, a grievance coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner, (2) filed by a prisoner on modified access, (3) filed by a prisoner who did not attempt to resolve the issue with a staff member first, or (4) filed in an untimely manner. *Id.* at ¶ G.

---

[8]Portions of Policy Directive 03.02.130 use the words "shall be rejected" while other portions use the words "may be rejected." *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶¶ F, G.

The Policy Directive provides guidelines, including deadlines, for internal appeals of the denial of a grievance at Step II and Step III.  *See id.* at ¶¶ R, DD.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.*  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations must be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

III.    **Grievance**

Plaintiff filed one grievance concerning the Eighth Amendment claim raised in his complaint.  Plaintiff filed Grievance No. LRF-04-09-01-539-12D1 on September 29, 2004 against health care staff, Defendant Ashley and "Tri-County Orthopedic" staff.  (Ex. A to Defs.' Notice, docket #99.)  In Grievance No. LRF-04-09-01-539-12D1, Plaintiff complains of being denied medical care for his broken arm.

- 11 -

The MDOC issued a Step I response, which stated:

Mr. Stevenson broke his arm on 04/15/04.  He was taken to the emergency room and an orthopedic specialist evaluated him.  His arm was placed in a cast.  Ultram and Motrin were ordered fro [sic] him on 04/16/04.  He was evaluated again by a specialist on 04/30/04.  His next appointments with the specialist were 06/02/04, 07/29/04 and 09/09/04.  He will be seen again six to eight weeks from then.  On 05/26/04 Motrin w[as] ordered for him through 11/26/04. Health Care received only one request for pain medication and that was dated 09/24/04.  Mr. Stevenson has a bone stimulator for his arm.  He is receiving appropriate care and specialty services.  He asserts that he has submitted kites and he has these copies of responses.  He is advised to bring them to health care for review.  Mr. Stevenson has never been refused pain medication.  He has had a current order since arriving at LRF; he has been remiss in requesting it.  He has been scheduled for a second opinion at Duane L. Waters Hospital to see an orthopedic specialist on 10/14/04.

(*Id.*)

Plaintiff then appealed his grievance to Step II.  Plaintiff named Defendants Royster, Burdette, Wilkerson, Schneeberger and CMS, in his Step II grievance.   The Step II response provided

"[T]he time frame for response to your grievance has elapsed.   In accordance with PD/Op 03.02.1340, your grievance may be filed to the next step."  (*Id.*)

Plaintiff finally appealed his grievance to Step III.  Step III grievance response states:

Grievant alleges an indifference to his medical needs because responsible medical staff avoided surgery when this was the required course of action.

The information presented upon appeal to step III has been reviewed.   The Grievant's medical record has been reviewed by the Regional Medical Officer.  Allegations that delay in surgery caused complications with the healing are unfounded.
Allegations that he was refused pain medication and to see a doctor are unfounded.

Grievance denied.

(*Id.*)

- 12 -

In his complaint, Plaintiff alleges an Eighth Amendment claim against Defendants Royster, CMS, Schneeberger and Levin.  In Defendants Royster and CMS' Motion for Summary Judgment, they first assert that Plaintiff failed to exhaust his available administrative remedies because he did not name Defendants Royster or CMS in Step I of Grievance No. LRF-04-09-01-539-12D1.  Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants in his grievance.  (Defs.' Br. in Supp. of Summ. J. at 4, docket #86.)  Second, Defendants Royster and CMS argue that Step I of the grievance identifies the "Date of Incident" as "several dates."  (*Id.* at 8.)  While Plaintiff dated his grievance "September 30, 2004,"[9] Defendants argue that his complaint dates back to April 15, 2004, the date Plaintiff broke his arm.  (*Id.*)  Therefore, Plaintiff failed to comply with the five-day requirement of MDOC Policy Directive 03.02.130, ¶ X.

In Defendants Levin and Schneeberger's Motion for Summary Judgment, they argue that Plaintiff failed to name Defendant Levin in his grievance.   (Defs.' Br. in Supp. of Mot. for Summ. J. at 5, 11, docket #88).  Further, Defendants state that the "most that [P]laintiff states about Dr. Schneeberger is that he was 'too conservative.'"[10] (*Id.*)  Defendants Levin and Schneeberger argue that Plaintiff failed to state a claim for deliberate indifference in his grievance against them because he did not set forth any facts as required by MDOC Policy Directive 03.02.130, ¶ T.  (*Id.* at 6, 10-13.)  Defendants admit that they are both in private practice and employed by Tri-County Orthopedics in Muskegon. (*Id.* at 2).

_____

[9]The actual date of Plaintiff's grievance is September 29, 2004.  (*See* Ex. A to Defs.' Notice, docket #99.) Defendants Royster and CMS erroneously reference the date Plaintiff's grievance was received at Step I of the three-step grievance process.  (*Id.*)

[10]The Court notes that Plaintiff referenced Defendant Schneeberger as too conservative in his Step II grievance. (Ex. A to Defs.' Notice, docket #99).

In Plaintiff's response to Defendants' motions, he argues that the *Jones* Court removed the requirement that he must name all Defendants at Step I of the three-step grievance process. (Pl.'s Resp. at 2, docket #91.) He also states that his grievance was never rejected by the MDOC because he failed to name a Defendant. (*Id.* at 4-5.) Finally, Plaintiff argues that he named Tri-County Orthopedics, "'to which defendants Dr. Levin and Dr. Schneeberger are associate[d] contractually to CMS at Step I of the grievance." (*Id.* at 6.) Plaintiff argues that he did not know of Defendants Levin and Schneeberger's "inadequate" medical treatment until the second orthopedic specialist examined Plaintiff in October 2004. (*Id.*)

Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants and asserting a claim of deliberate indifference in his grievance. However, the MDOC did not reject or deny Plaintiff's Grievance No. LRF-04-09-01-539-12D1 in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T, for failure to name the issues or persons being grieved; rather the MDOC addressed the grievance on the merits. In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion. This version of the MDOC Policy Directive states the following is required in a grievance:

> A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance and to file a grievance directly with the Prisoner Affairs Section pursuant to Paragraph S; the Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T (emphasis in original).

Plaintiff argues that the Supreme Court's decision in *Jones,* 127 S. Ct. at 922, holds that prisoners are not required to name any defendants in a Step I grievance. Plaintiff's reliance on *Jones,* 127 S. Ct. at 922 is misplaced. As stated above, the *Jones* Court dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130, there was no requirement that particular officials be named in a Step I grievance. In this case, the version of the policy that became effective on December 19, 2003 governs the grievance filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the grievance.

Plaintiff argues that naming "Tri-County Orthopedic" in his Step I grievance satisfies the exhaustion requirement as to Defendants Levin and Schneeberger.[11] The Court also notes that Plaintiff named "health care" in his Step I grievance and Defendants Royster and CMS in his Step II grievance. As found by the Supreme Court in *Jones*, "[t]he PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a) but nothing in the statute imposes a 'name all defendants' requirement for grievances . . . ." *Jones*, 127 S. Ct. at 922. *See also Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (finding that exhaustion, according to *Jones*, 127 S. Ct. at 923-25, is not "*per se* inadequate simply because a defendant was not named in the grievances"). In order to properly exhaust administrative remedies, prisoners must merely comply with the prison grievance procedures available to them. *Jones*, 127 S. Ct. at 922-23. Thus, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from

---

[11]Defendants Levin and Schneeberger only argue that Plaintiff failed to name Defendant Levin in his grievance. (*See* Defs.' Br. in Supp. of Mot. for Summ. J. at 5, 11, docket #88.) Plaintiff named Defendant Schneeberger in his Step II grievance. (*See* Ex. A to Defs.' Notice, docket #99.)

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Id*. at 923.

MDOC Policy Directive 03.02.130, ¶ T, does not require that Plaintiff name all Defendants in a Step I grievance. The policy directive requires that the grievant use certain forms to file a Step I, II or III grievance. The policy directive also provides that certain information be included in a grievance, i.e. the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how), but does not specifically state that the information must be in a Step I grievance. *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T (emphasis in original). The Sixth Circuit previously required a prisoner to specifically mention the involved parties in the Step I grievance. *See Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003). This is no longer the case. The Supreme Court in *Jones*, 127 S. Ct. at 922, abrogated the Sixth Circuit's rule in *Burton,* to require that inmates follow the prison's requirements for exhaustion. Plaintiff named Defendants Royster and CMS in his Step II grievance. As analyzed below, Plaintiff also implicated CMS by naming "health care" in his Step I grievance. Since MDOC Policy Directive 03.02.130, ¶ T, does not specifically require Plaintiff to name Defendants Royster and CMS in a Step I grievance, I find that Defendants CMS and Royster failed to satisfy their burden.

Plaintiff also sufficiently named CMS and Defendant Levin in his Step I grievance. First, Plaintiff implicated CMS as "health care" in his Step I grievance. CMS is the provider for health care for the Michigan Department of Corrections. Reading Plaintiff's grievance indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), Plaintiff adequately placed CMS, as "health care," on notice of the medical problems with his arm in his grievance. Second, Defendant Levin is a practitioner in "Tri-County Orthopedic," the entity Plaintiff named in his Step I grievance. By

- 16 -

naming "Tri-County Orthopedic" in his Step I grievance, Plaintiff placed the practitioners of Tri-County Orthopedic, including Defendant Levin, on notice of his medical claims.   Therefore, Defendants CMS, Royster, Levin and Schneeberger failed to satisfy their burden because Plaintiff satisfied the policy directive by placing those Defendants on notice in the three-step grievance process.

Defendants Levin and Schneeberger also argue that Plaintiff did not follow MDOC Policy Directive 03.02.130, ¶ T, by including enough information in his grievance to allege an Eighth Amendment claim against Defendants Levin and Schneeberger.   In Plaintiff's Step II grievance he states, "[o]n 10/13/04, R.N. Burdette called me out to review this grievance and she admitted that in fact Dr. Scheniberger's [sic] services had been too conservative and I was scheduled to be see[n] by a[] Specialist at Duane Waters Hospital for a second opinion."   (Ex. A to Defs.' Notice, docket #99.)   Plaintiff is not required to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory in a grievance.   "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh,* 450 F.3d 651, 651 (6th Cir. 2006).   "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; . . ." *Jones,* 127 S. Ct. at 923 (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)).   Reading Plaintiff's entire grievance, rather than the just the sentence referring to Defendant Schneeberger, Plaintiff placed Defendants Levin and Schneeberger on notice of his Eighth Amendment claim.   At the conclusion of Plaintiff's Step II grievance, he provides "[t]hus R.N. Burdette and all those equally responsible acted with deliberate indifference to my serious

medical needs, subjected me to endure pain and suffering, . . . ." (Ex. A to Defs.' Notice, docket #99.)   Therefore, Defendants Levin and Schneeberger have not satisfied their burden..

Finally, Defendants Royster and CMS argue that the grievance was not properly exhausted because Plaintiff listed the "Date of Incident" from the grievance as "several dates." (Ex. A to Defs.' Notice, docket #99.)   Defendants contend that providing such an ambiguous date is inappropriate under the policy directive, because a prisoner must submit his grievance within five business days of trying to resolve the issue. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ X.   Defendants argue that the grievance clearly was not filed within five business days, as the records indicate that Plaintiff injured his arm in April 2004.  The grievance was filed on September 29, 2004, five months after Plaintiff's  injury.

Defendant Royster and CMS' argument is without merit.  The grievance coordinator and the MDOC did not deny or reject the grievance as untimely; rather, the grievance was decided on the merits.  The MDOC did not deny or reject Plaintiff's grievance as untimely.  The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and whether a procedural defect bars a grievance from being heard on the merits.  When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules.  *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.") As the MDOC failed to reject the grievance as procedurally defective, notions of comity do not require this court to dismiss based upon those same administrative defects.  Defendants Royster and CMS failed to satisfy their burden.

**Part II**

Plaintiff originally filed his § 1983 civil rights action against defendants in the Eastern District of Michigan on January 24, 2006.  The court's docket reflects that the Marshal's Service issued a request for waiver of service of summons on February 15, 2006 to defendants Ashley and Burdette.  *See* docket nos. 9 and 10.  The case was transferred to this district on March 5, 2007.  The waivers were returned unexecuted.  In addition, while plaintiff stated in his motion for default judgment that defendant Overture (sometimes referred to as "Overton") was "served with process of service" in this matter, there is no evidence that Overture waived service or was actually served with a summons.  Correspondence from the Michigan Department of Corrections ("MDOC") advised the court that it does not have employees named "Ashley" or "RN Overture."  *See* docket nos. 9, 47.  The MDOC declined to accept service for Nurse Burdette, because she was no longer an employee at the Earnest C. Brooks or West Shoreline Facilities. See docket no. 10.

In an order to show cause issued on May 21, 2007, the court found that plaintiff failed to serve defendants Ashley, Burdette and Overture within the 120 day time limit set by Fed. R. Civ. P.  4(m), which provides that

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Pursuant to Rule 4(m) and W.D. Mich. LCivR 41.1, the court required plaintiff to show cause in writing within fourteen days as to why his claims against defendants Ashley, Burdette and Overture should not be dismissed for lack of prosecution and for failure to comply with these court rules.

Plaintiff filed both a "reply" (docket no. 89) and a "supplemental reply" (docket no. 93) to the order to show cause.   While it appears that plaintiff has performed some limited investigation: he has not identified "RN Overture" or "Overton;" has not found an address for Nurse Burdette; and has not determined the surname of "Ashley," whom he identified as a physical therapist.   "[W]hen a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." *Byrd v. Stone*,  94 F.3d 217, 219 (6th Cir. 1996). However, it is the plaintiff's responsibility to provide proper addresses to serve the defendants.  *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993).  *See Herbert v. Roark*, No. 05-74754-DT, 2006 WL 1284695 (E.D. Mich. May 9, 2006) ("[i]n a Section 1983 action, it is the inmate's responsibility to provide the proper addresses of the defendants for service").

Since filing his complaint two years ago, plaintiff has not provided the court with the identities and addresses of defendants Ashley, Burdette and Overton.  Plaintiff, as the person filing suit, bears the responsibility of providing this basic information to the court, and his status as a *pro se* prisoner does not excuse him from this responsibility. Plaintiff has failed to demonstrate good cause for failing to serve these three defendants.

### **Recommended Disposition**

For the foregoing reasons, I recommend that Defendants Royster and CMS' Motion for Summary Judgment (docket #86) and Defendants Schneeberger and Levin's Motion for Summary Judgment (docket #87) be **DENIED**.

- 20 -

I further recommend pursuant to Fed. R. Civ. P. 4(m) and W.D. Mich. LCivR 41.1 that plaintiff's claims against defendants Ashley, Burdette and Overton be **DISMISSED** without prejudice.

Dated:  January 31, 2008                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).