UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE STEVENSON,

        Plaintiff,

v.

MDOC, *et al.*,

        Defendants.
                                    /

Case No. 1:07-cv-213

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a combined motion to dismiss and for summary judgment filed by defendants Correctional Medical Services, Inc. ("CMS") and Robin Royster, M.D. (docket no. 128).

      **I.**        **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff set forth the following allegations in his verified complaint. Plaintiff broke his arm on April 15, 2004, while at the Muskegon Correctional Facility (MCF). Compl. at ¶¶ 13-16.

He was transferred to E.C. Brooks Correctional Facility (LRF) on May 17, 2004. *Id.* at ¶ 16. Plaintiff saw Dr. Royster on May 26, 2004, who "informed plaintiff that his arm would be examined by Tri-County Orthopedic Specialist [sic] soon, when plaintiff complained of the enormous pain in his left arm." *Id.* at ¶ 17. Plaintiff further alleged as follows:

> 18. That defendant Royster knew, or should have known, of the non-union break of the bone in plaintiff's left forearm and ordered surgery to repair and curtail the pain and damage being done by the non-union break when she had the authority to do so.
>
> 19. The plaintiff made numerous complaints with LRF medical staff, defendants Burdette, Wilkerson [sic], and Royster, and many were left unanswered, and the times medication was provided, limited supply of motrin, was entirely inadequate to quit the pain. (Attached hereto are copies of requests for pain medication).

Compl. at ¶¶ 18-19.

On June 2, 2004, defendant Dr. Schneeberger ordered that plaintiff be fitted with a bone stimulator and custom brace. *Id.* at ¶ 22. A person at the Duane Waters Hospital in Jackson, Michigan, "Unknown Ashley," improperly fitted the bone stimulator and brace, securing the cast with an ace bandage. *Id.* at ¶ 23.[1] The cast did not immobilize plaintiff's arm, caused parts of the bone to rub together, and resulted in agonizing pain. *Id.* at ¶ 25. It was not until six months later that another individual, "Unknown Burdette," called for a second opinion. *Id.* at ¶ 28.[2] Eventually, plaintiff was seen by Dr. Mishra, who performed surgery on October 29, 2004, that "should have been done immediately after the injury." *Id.* at ¶¶ 28, 35.

---

[1] "Unknown Ashley" was never identified. The court dismissed this unknown defendant for lack of service. *See* docket no. 108.

[2] "Unknown Burdette" was never identified. The court dismissed this unknown defendant for lack of service. *See* docket no. 108.

2

Plaintiff alleged that "Unknown Burdette" informed him "that surgery would be the last option for treatment due to CMS [sic] mission to keep medical cost [sic] down." *Id.* at ¶ 33. Plaintiff alleged that "any competent medical personnel would have known, because of the huge gap between the parts of the bone, immediate surgery would be required to repair the damage" and that due to these events, his left arm has a reduced range of use and dexterity. *Id.* at ¶¶ 28-29.

Plaintiff asserts that defendants' actions violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks $500,000.00 in compensatory and punitive damages from each of them.

**II.     Motion to Dismiss**

**A.     Legal Standard**

Defendant CMS seeks to dismiss plaintiffs' action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred

3

to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Eighth Amendment claim

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an

4

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's only allegation against CMS is that this defendant "contracted with MDOC to provide adequate medical care for MDOC prisoners." Compl. at ¶ 5. It is well established that "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996), citing *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658 (1978). A plaintiff who sues a private or public corporation for constitutional violations under 42 U.S.C. § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has held that like a municipal corporation, "CMS's liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001). Thus, in order to state a § 1983 claim against CMS, plaintiff "must allege the existence of a policy, practice or custom that resulted in the injury." *Moreno v. Metropolitan General Hosp.*, No. 99-5205, 2000 WL 353537 at *2 (6th Cir. March 28, 2000).

Plaintiff's complaint fails to do so. Plaintiff does not set forth sufficient facts "to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Construing the complaint in the light most favorable to plaintiff, there is no allegation or inference which suggests that CMS had a policy, custom or practice to violate prisoners' Eighth Amendment rights.

5

Plaintiff's complaint alleged that a number of doctors treated his severely broken arm over the course of approximately six months. The gist of plaintiff's complaint is that one of the doctors should have performed corrective surgery before October 29, 2006, and that as a result of this delay, he suffered pain and a disabled left arm. While plaintiff disagrees with the manner in which his broken arm was treated, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Furthermore, even if plaintiff's medical treatment was allegedly deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. *See generally, Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). Accordingly, defendant CMS' motion to dismiss should be granted.

### III. Motion for summary judgment

#### A. Legal standard

Dr. Royster seeks summary judgment on plaintiff's Eighth Amendment claim asserted against her.[3] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[3] It is unnecessary to address CMS' motion for summary judgment, because plaintiff has failed to state a claim for relief against this defendant.

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Eighth Amendment claim

### 1.     Hospital records

On April 15, 2004, plaintiff was transported to Hackley Hospital in Muskegon, after reporting that he fell out of a bunk. Docket no. 128-4 at p. 31. X-rays revealed "a three-part fracture to the distal one-third of the left humerus, with butterfly fragment." *Id.* Dr. Schneeberger examined plaintiff at the request of the emergency room doctor, and advised plaintiff of his preference to treat the injury "closed." *Id.* Plaintiff agreed to this course of action and was placed "in a well-padded long arm-hanging cast" with a strap to hand freely around his neck. *Id.*

7

## 2. MDOC records

The undisputed evidence establishes that Dr. Royster examined plaintiff only once. On May 26, 2004, Dr. Royster evaluated plaintiff shortly after his transfer to LRF. Docket no. 128-4, at p. 14. The doctor took a history of plaintiff, during which plaintiff described the injury to his left arm. *Id.* Plaintiff complained of neck spasms from the cast's sling, and pain from an abrasion inside the case at a bony prominence of the wrist. *Id.* Neither the doctor nor plaintiff could locate the source of the wrist pain. *Id.* He denied pain from the cast, or swelling or numbness of the left hand. *Id.* Plaintiff reported that he had an appointment with defendant Dr. Schneeberger on June 1, 2004, to take off the cast and obtain a re-evaluation. *Id.* Dr. Royster prescribed 600mg of Motrin as needed for pain and inflammation, as well as an albuterol inhaler for plaintiff's exercise induced asthma. *Id.* at pp. 14-15.

Dr. Royster prepared a "consultation request" for plaintiff on August 6, 2004, requesting an evaluation of plaintiff's progress by Dr. Schneeberger and a re-x-ray of plaintiff's wrist to assess the degree of healing. *Id.* at p.8. Dr. Royster prepared a second consultation request on September 13, 2004 for: "Re-evaluation of pt's progress in 6-8 weeks from off-site visit with Dr. Schneeberger regarding the above [sic] regarding union of fx of distal L humerus; until then - continue using brace and bone stimulator." *Id.* at p. 5. Dr. Royster noted a presumed diagnosis of "delayed union & overall lack of progress with stimulator." *Id.* Dr. Royster prepared a third consultation request on October 15, 2004, for a bone graft at Foote Hospital, noting that Dr. Mishra was willing to treat plaintiff. *Id.* at p. 3. Dr. Mishra performed the operation on October 29, 2004, stating in his report that plaintiff suffered from "[g]ross malunion, nonunion fracture of left

humerus," which was treated with an "[o]pen reduction and internal fixation with bone graft." *Id.* at pp. 23-24.

In addition, the MDOC records reflect that plaintiff's arm was treated by two other health providers who requested consultations. On or about April 19, 2004, William D. Nelson requested an "Ortho follow up from ER" for plaintiff's fracture. *Id.* at 19-20. On or about May 3, 2004, William D. Nelson requested a consultation for "orthopedic surgery." *Id.* at pp. 18-19. On or about June 22, 2004, Daniel A. Spitters requested an evaluation at the hospital regarding the new hanging cast re-applied by Dr. Schneeberger on June 1, 2004, noting that the doctor is attempting to use a "custom humeral fx brace . . . to avoid an open reduction for this patient." *Id.* at pp. 12-13. Plaintiff does not deny that these consultations were scheduled.

### 3. Discussion

Plaintiff appears to claim that Dr. Royster failed to refer him for corrective surgery at an earlier date. Viewing the evidence in the light most favorable to plaintiff, there is no evidence to support plaintiff's claim that Dr. Royster was deliberately indifferent to his medical needs. Doctor Royster monitored plaintiff's condition, prescribed Motrin for pain, requested two re-evaluations of plaintiff's fracture, and then requested the bone graft surgery. In addition, the record reflects that at least two other medical providers monitored plaintiff's condition along with Dr. Royster. While plaintiff apparently disagrees with the treatment provided by Dr. Royster (and the other medical providers), his disagreement with a course of medical treatment does not state a federal constitutional claim. *See Smith*, 910 F.2d at 502; *Woodberry*, 146 Fed. Appx. at 977. At most, plaintiff could claim that Dr. Royster was inattentive to his treating his condition. Even if this was true, "[m]edical malpractice does not become a constitutional violation merely because the

9

victim is a prisoner." *Estelle*, 429 U.S. at 105-06.  The record reflects that Dr. Royster monitored plaintiff's condition and referred him to specialists for treatment.  This court will not second guess Dr. Royster's medical judgment in this matter.  *See Westlake*, 537 F.2d at 860 at n. 5.  Accordingly, the doctor's motion for summary judgment should be granted.

### IV.     Recommendation

I respectfully recommend that the combined motion to dismiss and for summary judgment filed by defendants CMS and Dr. Royster (docket no. 128) be **GRANTED** and that they be dismissed from this action.


Dated:  July 20, 2009                                       /s/ Hugh W. Brenneman, Jr.
                                                                                        HUGH W. BRENNEMAN, JR.
                                                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).