UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE STEVENSON,

        Plaintiff,

v.

MDOC, *et al.*,

        Defendants.

_____/

Case No. 1:07-cv-213

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Dr. Robert Schneeberger and Dr. Frederic Levin (docket no. 145).

**I.    Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff set forth the following allegations in his verified complaint. Plaintiff broke his arm on April 15, 2004, while at the Muskegon Correctional Facility (MCF). Compl. at ¶¶ 13-16. "[A]t the time of treatment," Dr. Levin (referred to by plaintiff as "Lavine") informed plaintiff that

he suffered a non-union break that would required surgery to heal correctly, but did not schedule plaintiff for surgery. *Id.* at ¶ 14. On or about May 3, 2004, Dr. Schneeberger (sometimes referred to by plaintiff as "Shneiberger"), reviewed plaintiff's x-rays, noticed his arm was not healing and informed plaintiff that he would examine the arm in four weeks. *Id.* at ¶ 15. However, Dr. Schneeberger "did not recommend surgery for a broken arm that obviously required surgery for it to heal properly." *Id.* Plaintiff was transferred to E.C. Brooks Correctional Facility (LRF) on May 17, 2004. *Id.* at ¶ 16. On June 2, 2004, Dr. Schneeberger ordered plaintiff to be fitted with a bone stimulator and custom brace, treatment which the doctor "knew, or should have known, would be totally inadequate for a healing process to occur because of the large gap between the bones." *Id.* at ¶ 22. Eventually, plaintiff was seen by Dr. Mishra, who performed surgery on October 29, 2004, that "should have been done immediately after the injury." *Id.* at ¶¶ 28, 35. Plaintiff alleged that Drs. Schneeberger and Levin should have known, "from their first review of plaintiff's x-rays that the gap between the bone was too large to permit proper healing absent surgery, and neither ordered surgery when they had the authority and responsibility to do so." *Id.* at ¶ 30. Plaintiff alleged that defendants' actions violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks $500,000.00 in compensatory and punitive damages from each of them.

## II. Defendants' motion for summary judgment

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v.*

*Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

## B. Eighth Amendment claim

### 1. Legal standard

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to "allege that the medical need is 'sufficiently serious.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), *quoting Farmer*, 511 U.S. at 834. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. Thus,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106.

"[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. *See Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992) ("the Eighth Amendment does not apply to claims based on inadvertent failure to provide adequate care, negligent misdiagnosis, or an inmate's difference of opinion with medical personnel regarding diagnosis or treatment"). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

      **2.**    **Defendants are entitled to summary judgment because they were not state actors for purposes of an Eighth Amendment**

      **a.**    **Dr. Schneeberger**

Dr. Schneeberger contends that plaintiff's Eighth Amendment claim against him fails because he is not a state actor. The court agrees. The relevant standard for determining whether a doctor treating a prisoner acted under color of state law focuses on "the relationship among the State, the physician and the prisoner." *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009), quoting *West v. Atkins*, 487 U.S. 42, 55-56 (1988).

> There are three tests employed by the courts to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. Finally, under the symbiotic relationship test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.

*Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (internal citations and quotation marks omitted).

5

Thus, "[i]n determining whether a doctor acted under color of state law, the primary factor is 'the physician's function within the state system, not the precise terms of his employment.'" *Scott*, 577 F.3d at 649, quoting *West*, 487 U.S. at 56.

In his affidavit, Dr. Schneeberger stated that between April and September 2004, he was an orthopedic surgeon, engaged in the private practice of orthopedic surgery at Tri-County Orthopaedic Associates PLC ("Tri-County"), 1314 East Apple, Muskegon, Michigan. Schneeberger Aff. at ¶ 1 (docket no. 146-2). Neither Dr. Schneeberger nor Tri-County had a contractual relationship with the Michigan Department of Corrections or another governmental entity in connection with plaintiff's care. *Id.* Rather, plaintiff was referred to Tri-County from Correctional Medical Services, Inc. *Id.* Dr. Schneeberger examined plaintiff on four occasions. He examined plaintiff for the first time at the Hackley Hospital Emergency Room on April 15, 2004. *Id.* at ¶ 4. He examined plaintiff three other times (June 1st, July 29th and September 9th, 2004) at Tri-County's office in Muskegon. *Id.* at ¶¶ 4, 6-9. Plaintiff also saw one of Dr. Schneeberger's partners, Dr. Fett, at the Tri-County office on April 30, 2004. *Id.* at ¶ 5.

While Dr. Schneeberger provided orthopedic treatment to plaintiff at Hackley Hospital and at the Tri-County office for an emergency procedure and for a followup of that procedure, the Michigan Department of Corrections was responsible for plaintiff's medical care. *See* MDOC medical records (docket no. 128-4). Dr. Schneeberger stated that his conservative treatment of plaintiff's fracture was medically appropriate "due to the fracture's close proximity to the radial nerve and the risk of damage to the nerve accompanying surgery." *Id.* at ¶ 9. The doctor further stated, "my treatment of Mr. Stevenson was based wholly on my independent medical judgment and no other healthcare providers, including those employed by the Michigan Department

of Corrections, had any influence or input on my treatment of Mr. Stevenson's injury." *Id.* There is no evidence that the doctor was exercising powers particularly reserved to the state. *See, e.g., Rudy v. Village of Sparta*, 990 F. Supp. 924, 930-31 (W.D. Mich.1996) (holding that private physicians cannot be liable under section 1983 for ordering emergency medical procedures based upon their independent medical judgments). Similarly, there is no evidence of "state compulsion" requiring the doctor to treat plaintiff or any type of "symbiotic relationship" between the state and the doctor. Dr. Schneeberger was simply a private physician providing medical treatment to plaintiff for an emergency procedure and follow-up care. As such, the doctor was not a state actor for purposes of liability under § 1983. Accordingly, Dr. Schneeberger is entitled to summary judgment on plaintiff's Eighth Amendment claim.

   **b.    Dr. Levin**

Plaintiff alleged that Dr. Levin treated him at Hackley Hospital on or about April 15, 2004. Compl. at ¶ 14. In his affidavit, Dr. Levin stated that he is an orthopedic surgeon employed by Tri-County. Levin Aff. at ¶¶ 1-2 (docket no. 146-3). Dr. Levin is not employed by the government. *Id.* at ¶ 1. Dr. Levin stated that he never met, examined or spoke to plaintiff, and never participated in any fashion in diagnosing, treating or providing medical care to him. *Id.* at ¶¶ 3-4. Plaintiff does not identify any medical record or other evidence to rebut Dr. Levin's statement that he did not treat plaintiff. On the contrary, Hackley Hospital records establish that plaintiff's April 15, 2004 consultation at the hospital was with Dr. Schneeberger, not Dr. Levin. *See* Hackley Hospital Consultation record (docket no. 128-4). No reasonable juror would believe petitioner's claim that Dr. Levin treated him at the emergency room on April 15, 2004, when the hospital records clearly establish that Dr. Schneeberger was the consulting physician who advised plaintiff of his

7

treatment options and set the cast. *Id.* The hospital record "blatantly contradicts" plaintiff's claim that Dr. Levin treated him on April 15, 2004. For this reason, Dr. Levin is entitled to summary judgment. *Scott*, 550 U.S. at 380. Furthermore, even if Dr. Levin had treated plaintiff at that time, Dr. Levin, like his colleague Dr. Schneeberger, had no relationship with the state that could classify him as a state actor for purposes of liability under § 1983. Accordingly, Dr. Levin is entitled to summary judgment.

### 3. Dr. Schneeberger's treatment did not violate the Eighth Amendment

Assuming, *arguendo*, that Dr. Schneeberger was a state actor, his actions did not violate the Eighth Amendment. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category, because plaintiff has alleged that Dr. Schneeberger's treatment was inadequate.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Comstock*, 273 F.3d at 703 ("[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").

In some cases, however, the medical attention may be so "woefully inadequate" as to amount to no treatment at all. *Westlake*, 537 F.2d at 860 n. 5. *See, e.g.,Terrance v. Northville Regional Psychiatric Hospital*, 286 F.3d 834, 844 (6th Cir. 2002) (when a medical condition poses a serious need for treatment, the question for the court is whether the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness") (internal quotations omitted).

Dr. Schneeberger treated plaintiff's arm conservatively, having expressed concern about possible radial nerve injury that could accompany surgical treatment. Scheeberger Aff. at ¶ 4. Initially, the conservative course of treatment appeared to succeed. On April 30, 2004, plaintiff's x-rays demonstrated "a comminuted fracture of the left distal humerus which is in excellent position." *Id*. at ¶ 5. When Dr. Schneeberger examined plaintiff on June 1, 2004, plaintiff had gross motion at the fracture site and the x-rays showed no evidence of callus formation. *Id.* at ¶ 6. A new hanging cast was applied with a prescription for Hackley Orthotics to fit plaintiff with a custom humeral fracture brace to allow for suspension, to be combined with an external bone stimulator to promote healing of the fracture. *Id.* The doctor examined plaintiff on July 29, 2004, noting that the fracture had progressed to a "delayed union." *Id.* at ¶ 7. At this examination, plaintiff was told of his need to wear the humeral fracture brace at least 10 hours a day and assured the doctor that he would. *Id.* Dr. Schneeberger stated that if the fracture had not healed after a re-check in six to eight weeks, then surgery would be necessary. *Id.* On September 9, 2004, the doctor noted a lack of progress in the healing process, which would result in a "nonunion" and require reconstructive surgery to promote the healing of the fracture. *Id.* at ¶ 8. Dr. Schneeberger was not interested in performing reconstructive surgery, given the location of the fracture and the proximity

9

of the radial nerve to the fracture site. *Id.* Finally, Dr. Mishra, the physician who ultimately performed plaintiff's surgery, opined that conservative (non-surgical) treatment of injuries like plaintiff's "is frequently a reasonable treatment option, at least for a period of time, which orthopedic surgeons often pursue, based upon their medical judgment and discretion." Mishra Aff. at ¶ 6 (docket no. 146-7).

Viewing the facts in the light most favorable to plaintiff, there is no evidence that Dr. Schneeberger acted with deliberate indifference to plaintiff's medical condition. The doctor treated the fracture in the emergency room and followed a course of conservative treatment to avoid potential surgical complications to plaintiff's radial nerve. There is no evidence that Dr. Schneeberger's treatment of plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness" as to violate the Eighth Amendment. *See Terrance*, 286 F.3d at 844. On the contrary, the doctor provided a reasonable course treatment for plaintiff's unique injury. *See* Mishra Aff. at ¶ 6.

While plaintiff now disagrees with Dr. Schneeberger's conservative course of treatment that commenced on April 15, 2004, this disagreement does not rise to the level of an Eighth Amendment claim. *See Woodberry v. Simmons*, 146 Fed. Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Smith v. Sator*, 102 Fed. Appx. 907, 909 (6th Cir. 2004) ("differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim") (*citing Westlake*, 537 F.2d at 860 n. 5); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim).

### III. Recommendation

I respectfully recommend that defendants' motion for summary judgment (docket no. 145) be **GRANTED** and that this action be dismissed.


Dated: November 2, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).